IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| UNITED STATES OF AMERICA, | ) ) ) ) | |
|---|---|---|
| v. | ) ) ) | No. 11 CR 360 |
| ARCADIO HERNANDEZ, | ) ) | |
| Defendant. | ) | |

# MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendant Arcadio Hernandez's (Hernandez) motion to suppress. For the reasons stated below, the court denies the motion to suppress.

## BACKGROUND

Hernandez seeks to suppress certain statements he allegedly made on November 23, 2010, in connection with his arrest for possession of a firearm and narcotics. In support of his motion to suppress, Hernandez submitted a sworn affidavit indicating that he was never advised of his constitutional rights, as required by *Miranda v. Arizona*, 384 U.S. 436 (1966), that he did not waive such rights, and

1

that he never admitted to owning or possessing the firearm at issue in this case. On January 12, 2012, the court held a suppression hearing on this matter. At the suppression hearing, Chicago Police Officer Anthony Varchetto testified that when he and his partner, Officer Lenny Pierri, first approached Hernandez on November 23, 2010, they discovered that Hernandez was carrying a magnetic key holder that contained heroin. (Tr. 19). Officer Varchetto also testified that immediately upon discovering the heroin, the officers placed Hernandez under arrest. (Tr. 19-20). Officer Varchetto further testified that after they arrested Hernandez, Officer Pierri asked Hernandez about the contents of a red bag Hernandez had been carrying prior to the officers' approach, and that Hernandez indicated that "he had just ripped the guys around the corner for dope and a gun." (Tr. 20, 29).

In addition, Officer Varchetto testified that immediately after Hernandez made that statement, Officer Varchetto administered *Miranda* warnings to Hernandez, and Officer Pierri searched the red bag and found the firearm. (Tr. 20-21). Officer Varchetto also testified that after Hernandez was Mirandized at the scene of arrest, Hernandez indicated that he understood his rights and agreed to answer questions. (Tr. 10-12). Officer Varchetto further testified that although neither of the officers asked Hernandez any questions at that time, Hernandez offered the officers information on a continuous basis while being transported to the police station,

including information relating to other crimes in the neighborhood and information relating to the firearm and narcotics that were in the red bag that Hernandez had been carrying. (Tr. 13).

Officer Varchetto additionally testified that he administered *Miranda* warnings to Hernandez for a second time at the police station before interviewing Hernandez, and that Hernandez again indicated that he understood his rights and agreed to answer questions. (Tr. 15). Officer Varchetto further testified that during the interview at the police station, Hernandez indicated that he had taken the firearm and narcotics found in the red bag from certain individuals who had beat up Hernandez the week before, to retaliate against them for the beating. (Tr. 16-17). Officer Varchetto also testified that during the interview at the police station, Hernandez described how, during the course of the day, he had observed the individuals who had beaten him, had seen where they hid the firearm and narcotics, and had later taken them. (Tr. 16, 29).

Hernandez has moved to suppress the statements he made in response to the officers' questioning, both before and after *Miranda* warnings were given to him. The Government indicated at the suppression hearing that it would not seek to admit the pre-*Miranda* statement Hernandez made in response to Officer Pierri's question about the contents of the red bag, but that it would seek to introduce the post-

3

*Miranda* statements Hernandez made during his transfer to the police station and during his interview at the police station. At the close of the suppression hearing, Hernandez argued for the first time that even if Hernandez was given *Miranda* warnings at the scene of arrest and at the police station, the statements Hernandez made during his transfer to the police station and during his interrogation at the police station should be suppressed based on *Missouri v. Siebert*, 542 U.S. 600 (2004). The court instructed the parties to submit supplemental briefing on this issue, and the parties each submitted briefs for the court to consider.

## LEGAL STANDARD

The Government carries the burden of establishing by a preponderance of the evidence that a defendant was advised of his *Miranda* rights, that he waived those rights, and that such waiver was made knowingly and voluntarily. *See Colorado v. Connelly,* 479 U.S. 157, 168 (1986). A waiver is voluntary when it is the "product of a free and deliberate choice rather than intimidation, coercion, or deception," and "made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Berghuis v. Thompkins*, 130 S.Ct. 2250, 2260 (2010)(citation omitted)(internal quotations omitted). A voluntary waiver can be express or implied through "the defendant's silence, coupled with an

understanding of his rights and a course of conduct indicating waiver." *Id.* at 2261 (citation and internal quotation omitted).

## DISCUSSION

After hearing the testimony of Officer Varchetto relating to the circumstances of Hernandez's arrest, the court finds that the Officer Varchetto was credible, and that the Government has established, by a preponderance of the evidence, that Hernandez was advised of his *Miranda* rights both at the scene of his arrest and prior to his interrogation at the police station. At issue is whether the statements made by Hernandez after he was given *Miranda* warnings are admissible in light of Officer Pierri's pre-*Miranda* question to Hernandez about the contents of the red bag and Hernandez's pre-*Miranda* response indicating that the red bag contained narcotics and a firearm.

In *Siebert*, the Supreme Court observed that, in many cases, *Miranda* warnings would not likely be effective where "interrogators employ[ed] the technique of withholding [*Miranda*] warnings until after interrogation succeed[ed] in eliciting a confession." 542 U.S. at 613. The Seventh Circuit indicated in *United States v. Heron*, 564 F.3d 879 (7th Cir. 2009), that the Supreme Court's opinion in *Siebert* permitted two possible approaches to resolving issues raised by a two-step

interrogation process, one being an "intent-based test" focusing on the intentions of law enforcement officers during questioning, and another being a "defendant focused" test that examined the effectiveness of *Miranda* warnings based on a uniform application of the factors outlined in *Siebert*, regardless of the interrogator's intent. *Heron*, 564 F.3d at 885-86; *see also United States v. Stewart*, 388 F.3d 1079, 1090 (7th Cir. 2004)(indicating that "at least as to *deliberate* two-step interrogations in which *Miranda* warnings are intentionally withheld until after the suspect confesses, the central voluntariness inquiry . . . has been replaced by a presumptive rule of exclusion, subject to a multifactor test for change in time, place, and circumstances from the first statement to the second," and further indicating that *Siebert* might not control "[w]here the initial violation of *Miranda* was not part of a deliberate strategy to undermine the warnings"). In cases that have been decided subsequent to *Heron*, the Seventh Circuit has adopted an intent-based approach to addressing two-step interrogations. *See, e.g., United States v. Littledale*, 652 F.3d 698, 702 (7th Cir. 2011); *United States v. Swanson*, 635 F.3d 995, 1004 (7th Cir. 2011); *United States v. Ambrose*, 2012 WL 506741, at *9 (7th Cir. 2012); *United States v. Richardson*, 657 F.3d 521, 524-25 (7th Cir. 2011).

In employing an intent-based approach, the court first determines whether law enforcement officers deliberately employed a two-step questioning process designed

to undermine *Miranda*. *See Heron*, 564 F.3d at 885-86 (finding that the district court did not commit plain error in finding that the failure to give *Miranda* warnings was an honest mistake); *Littledale*, 652 F.3d at 702 (indicating that the district court was not required to make a deliberateness finding where a defendant was not in custody during pre-*Miranda* questioning). It is the Government's burden to establish by a preponderance of the evidence that "the police did *not* deliberately withhold the warnings until after they had an initial inculpatory statement in hand." *United States v. Stewart*, 536 F.3d 714, 719 (7th Cir. 2008)(emphasis in original)(citation omitted). According to the credible testimony of Officer Varchetto, Officer Pierri asked Hernandez only one question prior to the time Officer Varchetto administered *Miranda* warnings to Hernandez. (Tr. 20). In addition, Officer Varchetto's testimony reveals that after Hernandez indicated to the officers that he had stolen drugs and a gun from individuals around the corner, the officers immediately refrained from further questioning of Hernandez, Officer Varchetto administered *Miranda* warnings to Hernandez, and Hernandez indicated at that time that he understood and waived his rights. (Tr. 11-13, 20-22). Officer Varchetto's testimony further reveals that neither he nor Officer Pierri asked Hernandez any additional questions about the contents of the red bag until they had arrived at the police station, placed Hernandez into an interrogation room, and advised Hernandez of his *Miranda*

rights for a second time. (Tr. 13). Hernandez has not pointed to any evidence showing that the officers engaged in a deliberate two-step interrogation process calculated to circumvent *Miranda*. Contrary to Hernandez's argument, the fact that Officer Pierri's single question elicited a confession from Hernandez does not, in and of itself, suggest that Officer Pierri deliberately engaged in a two-step interrogation process designed to thwart the purposes of *Miranda*. The record reflects that Officer Pierri merely asked Hernandez what was in the bag Hernandez had been carrying. It was not a foregone conclusion that such a question would elicit information indicating that Hernandez was committing further crimes. Based on the above, the court finds that the Government has met its burden of establishing by a preponderance of the evidence that Officer Varchetto and Officer Pierri did not deliberately withhold *Miranda* warnings until they had obtained a confession from Hernandez.

Under the intent-based approach applied in the Seventh Circuit, where there is no deliberative intent to withhold *Miranda* warnings, *Oregon v. Elstad* 470 U.S. 298 (1985) controls the determination of whether to admit a defendant's second, post-*Miranda* statement. *See., e.g., Richardson*, 657 F.3d at 524-25. In *Elstad*, the Supreme Court "held that a 'subsequent administration of *Miranda* warnings to a suspect who has given a *voluntary* but unwarned statement ordinarily should suffice

to remove the conditions that precluded admission of the earlier statement.'" *Swanson*, 635 F.3d at 1004 (quoting *Elstad*, 470 U.S. at 314). In determining whether a pre-*Miranda* statement was voluntary, the court considers whether "'in light of the totality of the circumstances, [the statement] is the product of a rational intellect and free will and not the result of physical abuse, psychological intimidation, or deceptive interrogation tactics that overcome the defendant's free will.'" *Ambrose*, 2012 WL 506741, at *9 (citations omitted). A statement is involuntary only if elicited through "[c]oercive police activity." *Id*. Further, merely showing that a defendant was nervous, handcuffed, and held at the scene of arrest for a short period of time does not demonstrate "coercive police activity sufficient to overcome a defendant's will," especially when that defendant has had prior experience with the criminal justice system. *Richardson*, 657 F.3d at 524-25. There are no facts in this case to suggest that Hernandez's pre-*Miranda* statement regarding the contents of the red bag was made involuntarily. The record reflects that Officer Pierri asked Hernandez about the contents of the red bag shortly after placing him under arrest for possession of heroin, and that Hernandez immediately answered Pierri's question. (Tr. 20). In addition, Hernandez has been charged with the crime of being a felon in possession of a firearm, suggesting that Hernandez has at least some prior experience with the criminal justice system. Since Hernandez's

9

pre-*Miranda* statement about the contents of the red bag was voluntary, his later post-*Miranda* statements are admissible if they were also voluntary. The record reflects that after Hernandez was Mirandized, he indicated to the officers that he understood his rights and waived them. (Tr. 12-13). The record also indicates that in Hernandez's post-*Miranda* statements, he voluntarily offered information regarding other crimes in the neighborhood and information explaining his motive for possessing the narcotics and firearm. (Tr. 13). Such facts demonstrate that Hernandez himself initiated the post-*Miranda* dialogue with officers in an attempt to curry favor with them. Therefore, the court finds that Hernandez's post-*Miranda* statements were also voluntary, and that they are admissible based on *Elstad*.

In addition, even if the court found that Hernandez's pre-*Miranda* statement about the contents of the red bag was involuntary, the post-*Miranda* statements would still be admissible. If a pre-*Miranda* statement was involuntary, "then later statements provided after *Miranda* warnings are admissible only if there is a sufficient break in the stream of events to insulate the second confession from the earlier taint." *Ambrose*, 2012 WL 506741, at *9. When determining whether a later post-*Miranda* statement "is insulated from the taint of the first statements," the court considers "whether there has been a sufficient 'break in the stream of events' such as 'the time that passes between confessions, the change in place of interrogations, and

10

the change in identity of the interrogators.'" *Swanson*, 635 F.3d at 1004 (citations omitted). As noted above, as soon as Hernandez answered Officer Pierri's question regarding the contents of the bag, Officer Varchetto administered *Miranda* warnings to Hernandez, which Hernandez indicated he understood. (Tr. 12-13, 20). Neither Officer Varchetto nor Officer Pierri asked Hernandez any further questions at that time. (Tr. 13). Instead, the Officers transported Hernandez to the police station. (Tr. 13). In addition, the record reflects that during the transfer to the police station, neither Officer Varchetto nor Officer Pierri asked any questions of Hernandez, but in spite of that fact, Hernandez voluntarily offered information to the officers regarding other crimes in the neighborhood and regarding his motive for taking the narcotics and firearm. (Tr. 13). The record also reflects that the officers did not drive Hernandez directly to the police station, but instead took a detour in order to investigate a crime that Hernandez indicated was being committed in the neighborhood at the time. (Tr. 13-14). The record further reflects that although both Officer Varchetto and Officer Pierri were present throughout the sequence of events, it was Officer Pierri who asked Hernandez the pre-*Miranda* question. (Tr. 20). In contrast, it was Officer Varchetto who administered the *Miranda* warnings to Hernandez and later questioned Hernandez, while Officer Pierri stood outside the interrogation room and was only intermittently present during the interrogation at the

11

police station. (Tr. 14, 28, 32). Although the record does not reflect that a long period of time passed between Hernandez's pre-*Miranda* statement and his post-*Miranda* statements, the above facts suggest some break in the stream of events such that Hernandez's post-*Miranda* statements were insulated from his first pre-*Miranda* statement. Therefore, even if the court did not view Hernandez's initial statement as voluntary, his post-*Miranda* statements would still be admissible.

Finally, even if the intent-based approach was not controlling in the Seventh Circuit or the Government had not met its burden of establishing that Officer Pierri and Officer Varchetto did not purposefully withhold *Miranda* warnings until they had already obtained a confession, Hernandez's post-*Miranda* statements would still be admissible under the factors laid out in *Siebert*, which instructs the court to consider: "the completeness and detail of the questions and answers in the first round of interrogation, the overlapping content of the two statements, the timing and setting of the first and the second, the continuity of police personnel, and the degree to which the interrogator's questions treated the second round as continuous with the first." *Siebert*, 542 U.S. at 615. Pursuant to the above, the first round of interrogation in the instant case merely consisted of Officer Pierri asking Hernandez what was in the bag that Hernandez had been carrying. (Tr. 20). The second round of interrogation, which occurred post-*Miranda*, included much more detailed

questions and answers regarding where the contraband was located, how Hernandez knew about the contraband, and why he had taken it. (Tr. 16-17, 20). In addition, although not a lot of time passed between the first and second interrogation, they occurred at different locations. Further, as discussed above, it was Officer Pierri who asked Hernandez the one pre-*Miranda* question, while it was Officer Varchetto who administered *Miranda* warnings to Hernandez and later questioned Hernandez in detail. (Tr. 14, 20, 28, 32). The above facts are sufficient to signal a change in circumstances demonstrating that the second round of questioning was not treated as continuous with the first. Thus, the factors outlines in *Siebert* weigh against suppression of Hernandez's post-*Miranda* statements. Based on the above, the court finds that the post-*Miranda* statements made by Hernandez during his transfer to and interview at the police station are admissible. Therefore, the court denies Hernandez's motion to suppress.

## CONCLUSION

Based on the foregoing analysis, the court denies Hernandez's motion to suppress.

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated: February 23, 2012